IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

BRADLEY WASHAM                                                                                    PLAINTIFF

v.                                         Case No. 3:19-cv-00231 KGB

BNSF RAILWAY COMPANY                                                                      DEFENDANT

ORDER

Before the Court is defendant BNSF Railway Company's ("BNSF") motion for *Daubert* hearing and reconsideration of exclusion of expert William Neale (Dkt. No. 186). Plaintiff Bradley Washam responded in opposition to the motion for hearing and reconsideration (Dkt. No. 189). BNSF filed a reply (Dkt. No. 190). Mr. Washam filed a sur-reply (Dkt. No. 193). For the following reasons, the Court denies, in part, and grants, in part, BNSF's motion for *Daubert* hearing and reconsideration of the exclusion of expert Mr. Neale (Dkt. No. 186).

**I.      Overview Of Arguments**

By prior Order, this Court examined the parties' filings; applied the controlling analysis pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and controlling authorities construing it; and ruled that, on the record before it, BNSF did not "meet its burden of establishing by a preponderance of the evidence that Mr. Neale's testimony will be reliable or helpful to the jury in this case." (Dkt No. 145, at 22). The Court entered its Order on October 2, 2020, excluding Mr. Neale's proposed expert testimony based on the then-existing record before the Court (Dkt. No. 145). That record included Mr. Neale's expert report, excerpts of his deposition testimony, and his affidavit, along with the parties' filings (Dkt. Nos. 105, 117, 123). On April 23, 2021, BNSF first requested a *Daubert* hearing and reconsideration of the Court's ruling (Dkt. No. 186).

The Court conducted a status conference with counsel on October 5, 2021, at which time counsel discussed with the Court the status of pretrial matters, including this pending motion (Dkt. No. 208). At that hearing, counsel for BNSF made clear that BNSF requests a hearing to present Mr. Neale and his anticipated testimony for the Court's consideration. Counsel for BNSF also explained that, even if the Court persists in its ruling to exclude portions of Mr. Neale's testimony challenged by Mr. Washam, counsel for BNSF believes that there are some topics Mr. Neal still should be allowed to address before a jury (*see also* Dkt. No. 186, at 22-23 (explaining further this request)).

      A.      **BNSF's Argument**

In support of its motion for reconsideration, BNSF argues that, when this Court ruled on the motion to exclude Mr. Neale's proposed expert testimony in this case, the Court based its ruling on argument made for the first time in the reply brief filed by Mr. Washam (Dkt. No. 186, at 1). BNSF contends that Mr. Neale's methodology was not challenged by Mr. Washam in his opening brief and that "BNSF was prejudiced by not being able to respond to this argument" (*Id.*). As a result, BNSF seeks reconsideration of the Court's Order and a *Daubert* hearing purportedly "for purposes of curing this prejudice" (*Id.*).

      BNSF states:

> Mr. Neale is a video reconstructionist and analysis expert who was retained in this case because one of the key pieces of evidence pertinent to the case is the surveillance video from the Anchor Packaging Industry in Jonesboro, Arkansas. Mr. Neale's job was to analyze the video to determine what occurred when Mr. Bradley Washam ('Plaintiff') was not visible on the footage.

(*Id.*, at 2). In its current motion, BNSF maintains that "Mr. Neale used video analytical software to determine small changes in the pixels, not perceptible to the human eye, in order to extrapolate Plaintiff's position when he is not in view of the camera." (*Id.*). In other words, BNSF asserts

2

that Mr. Neale's analysis and anticipated testimony is "based on explanation of the physical evidence available to the parties through the video that is not able to be perceived by a lay person." (*Id.*).

### B. Mr. Washam's Argument

Mr. Washam maintains that BNSF's argument is without merit in that his *Daubert* motion "clearly challenged Neale's 'methodology' and evidence bearing on such was presented by both sides for the Court to consider, and that BNSF "was not 'prevented' from presenting evidence supporting Neale's methodology" (Dkt. No. 189, at 1). Mr. Washam specifically points this Court to BNSF's opposition to Mr. Washam's Daubert motions in which BNSF "addressed the issue of his methodology and its reliability." (*Id.* (citing Dkt. Nos. 117 and 117-4)).

## II. Applicable Legal Standards

### A. Standard For Motion For Reconsideration

This Court acknowledges that a district court has "the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) (internal quotation marks and citation omitted). The standard for reconsideration of an interlocutory order is less clear. *Vosdingh v. Qwest Dex, Inc.,* No. Civ. 03–4284 ADM/AJB, 2005 WL 1323007, at *1 (D. Minn. June 2, 2005).

Although Federal Rule of Civil Procedure 54(b) states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties. . . may be revised at any time before the entry of a judgment," some language in Eighth Circuit caselaw suggests that motions to reconsider "are nothing more than Rule 60(b) motions when directed at non-final orders." *Elder–Keep v. Aksamit,* 460 F.3d 979, 984 (8th Cir. 2006) (citing *Anderson v. Raymond Corp.,* 340 F.3d 520, 525 (8th Cir. 2003); *Broadway v.*

3

*Norris,* 193 F.3d 987, 989 (8th Cir. 1999)). This language has been characterized by other courts as *dicta* and criticized for failing to recognize a district court's inherent authority to reconsider interlocutory orders, authority which as a practical matter a district court needs in order to modify orders in response to the changing circumstances of a lawsuit before it. *Garrett v. Albright,* No. 4:06–CV–4137–NKL, 2008 WL 268993, at *2 n.2 (W.D. Mo. Jan. 30, 2008) (Laughrey, J.) (expressing disagreement with *Elder–Keep* ); *Laird v. Stilwill,* 982 F.Supp. 1346, 1354 (N.D. Iowa 1997) (holding that a district court's discretion to amend an interlocutory order is greater than its power to amend a final judgment); *see also Vosdingh,* 2005 WL 1323007, at *1 (observing that "[s]ince this Court owes no deference to itself and knows it makes mistakes, motions to reconsider will be granted and a change made when convinced an error has been made, manifest or not.").

For these reasons, the Court determines that, although the Federal Rules of Civil Procedure do not expressly provide for motions to reconsider, Rule 54(b) encompasses the power to revise an interlocutory order any time prior to the entry of final judgment. *See Thunder Basin Coal Co., L.L.C. v. Zurich Am. Ins. Co.*, No. 4:12-CV-231 (CDP), 2013 WL 6410012, at *1 (E.D. Mo. Dec. 9, 2013); *Trickey v. Kaman Indus. Techs. Corp.*, No. 1:09-CV-00026 (SNLJ), 2011 WL 2118578, at * 1–2 (E.D. Mo. May 26, 2011); *see, e.g., Jiang v. Porter*, No. 4:15-CV-1008 (CEJ), 2016 WL 193388, at *1 (E.D. Mo. Jan. 15, 2016) (applying Rule 54(b) to a motion to reconsider the denial of a motion to dismiss).

Specifically, Rule 54(b) states that:

> [A]ny order. . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

Under Rule 54(b), a court may reconsider an interlocutory order to "'correct any clearly or manifestly erroneous findings of fact or conclusions of law.'" *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, No. 4:00-CV-1073 (CEJ), 2011 WL 1599550, at *1 (E.D. Mo. Apr. 27, 2011) (quoting *Jones v. Casey's Gen. Stores*, 551 F. Supp. 2d 848, 854 (S.D. Iowa 2008)); *see Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988). In particular, a motion to reconsider may be granted if the earlier decision: "'(1) misunderstood a party, (2) made a decision outside of the adversarial issues, or (3) would be rendered incorrect because of a 'controlling or significant change in law' since the issues were submitted to the Court.'" *Trickey*, 2011 WL 2118578, at *2 (quoting *Westinghouse Elec. Co. v. United States*, No. 4:03-CV-861, 2009 WL 881605, at *4 (E.D. Mo. Mar. 30, 2009)); *see also Pet Quarters, Inc. v. Ladenburg Thalmann and Co.,* No. 4:04-CV-00697-BRW, 2011 WL 1135902, at *1 (E.D. Ark. Mar. 28, 2011) (reasoning that an "intervening change in the controlling law is a recognized ground for granting a motion for reconsideration").

A motion to reconsider under Rule 54(b), however, is "not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *Julianello v. K-V-Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015); *see also Evans v. Contract Callers, Inc.*, No. 4:10-CV-2358 (FRB), 2012 WL 234653, at *2 (E.D. Mo. Jan. 25, 2012) ("Although the Court has the power to revisit prior decisions of its own. . . in any circumstance, [it] should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." (internal quotation marks and citation omitted; formatting in original)).

Finally, "when evaluating whether to grant a motion to reconsider, the Court also has an interest in judicial economy and ensuring respect for the finality of its decisions, values which

would be undermined if it were to routinely reconsider its interlocutory orders." *Trickey*, 2011 WL 2118578, at *2 (citing *Disc. Tobacco Warehouse, Inc. v. Briggs Tobacco and Specialty Co.*, No. 3:09-CV-5078 (DGK), 2010 WL 3522476, at *1 (W.D. Mo. Sept. 2, 2010)).

### B. Standard For *Daubert*

This Court recognizes that Federal Rule of Evidence 702 has been characterized as "'one of admissibility rather than exclusion.'" *Shuck v. CNH America, LLC*, 498 F.3d 868, 874 (8th Cir. 2007) (quoted citation omitted). "'[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'" *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) (quoted citations omitted). "'[R]ejection of expert testimony is the exception rather than the rule.'" *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (quoting Fed. R. Evid. 702 advisory committee's note). Gaps in an expert witness's qualifications or knowledge generally go to the weight of the testimony and not its admissibility. *Robinson*, 447 F.3d at 1100.

In his motion challenging the admission of Mr. Neale's expert testimony, Mr. Washam challenged the anticipated testimony pursuant to Federal Rule of Evidence 702 (Dkt. No. 105, at 2–3). Specifically, he argued that "the jury is equally able to view the surveillance video and determine for themselves what it shows. Therefore, because Neale provides no expertise or special knowledge to assist the jury in interpreting the video, his testimony should be excluded." (*Id.*, at 2). Mr. Washam framed this Court's inquiry as whether the proffered testimony "is both reliable and relevant." (*Id.*). The reliability inquiry clearly goes to methodology used, and given the controlling law on *Daubert* and the record before this Court at the time, BNSF's arguments on this point in its motion for reconsideration ring hollow.

6

In response to Mr. Washam's challenge to Mr. Neale's anticipated testimony, BNSF had the burden of establishing, by a preponderance of the evidence, that Mr. Neale's testimony was admissible under Rule 702. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006) (citing *Daubert,* 509 U.S. at 589–90). This required sufficient proof that Mr. Neale's testimony was "the product of reliable principles and methods," and that he "applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. *Khoury v. Philips Med. Sys.*, 614 F.3d 888, 892 (8th Cir. 2010). The proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires. *See In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d 902, 913–14 (D. Minn. 2020). To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Khoury*, 614 F.3d at 892 (quoting *Barrett*, 606 F.3d at 980) (internal citations omitted).

Factors bearing on the admissibility of expert evidence include: (1) whether the theory or technique applied can be tested, (2) whether the theory or technique has been subject to peer review and publication, (3) the known or potential rate of error, and (4) whether it is accepted in the relevant discipline. *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012) (citing *Daubert*, 509 U.S. at 593-94); *see also Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 635 (8th Cir. 2007) (listing same factors; citing *Daubert*, 509 U.S. at 593-94); *Pro Serv. Auto., L.L.C. v. Lenan Corp.*, 469 F.3d 1210, 1216 (8th Cir. 2006) (listing same factors; quoting *Smith v. Cangieter*, 462 F.3d 920, 923 (8th Cir. 2006) (citing *Daubert*, 509 U.S. at 592-94)). These factors are not exclusive,

however, and they need not be considered in every case because, "[o]f course, the *Daubert* reliability factors should only be relied upon to the extent that they are relevant and the district court must customize its inquiry to fit the facts of each particular case." *Shuck*, 498 F.3d at 874 (quoting *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1083 (8th Cir. 1999) (internal citations omitted)).

Other factors courts may consider include "'whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.'" *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (quoting *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2007)). "While weighing these factors, the district court must continue to function as a gatekeeper who 'separates expert opinion evidence based on "good grounds" from subjective speculation that masquerades as scientific knowledge.'" *Id.* (quoting *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001)).

The Supreme Court instructed district courts to focus on "principles and methodology, not on the conclusions that they generate," *Daubert*, 509 U.S. at 595, but later the Supreme Court recognized that "conclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Accordingly, a district court's focus on principles and methodology "need not completely pretermit judicial consideration of an expert's conclusions." *Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 11, 15 (8th Cir. 2011) (quoting *Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)).

An expert's opinion should be excluded if it "'is so fundamentally unsupported that it can offer no assistance to the jury.'" *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 865 (8th Cir. 2010)

(quoted citations omitted). In the words of the Supreme Court, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146; *see Kuhn*, 686 F.3d at 625 (quoting *Joiner*, 522 U.S. at 146); *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 448 (8th Cir. 2011) (same); *Pro Serv. Auto.*, 469 F.3d at 1216 (same); *Cangieter*, 462 F.3d at 924 (same); *Marmo*, 457 F.3d at 758 (same); *J.B. Hunt Transport, Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) (same).

### III. Analysis

Against the backdrop of the *Daubert* standard, the Court applies the standard of Rule 54(b) to BNSF's motion for reconsideration. With respect to the first element, the Court finds that BNSF had ample opportunity to argue this matter previously. The Court has studied the parties' filings, arguments, and exhibits and rejects any suggestion that Mr. Washam raised for the first time in his reply a challenge to Mr. Neale's methodology about which BNSF was unaware. A challenge to Mr. Neale's methodology was explicit and implicit in the *Daubert* challenge mounted by Mr. Washam in his opening motion and the arguments made (Dkt. No. 105). Further, BNSF addressed Mr. Neale's methodology in its response to Mr. Washam's motion (Dkt. No. 117). For these reasons, the Court denies any request by BNSF to expand the scope of the record examined by the Court at the time the Court ruled on Mr. Washam's *Daubert* motion challenging Mr. Neale's testimony, unless BNSF can demonstrate some other reason why it could not have raised these arguments previously.

With the understanding that, given the arguments made by BNSF to date, the record before the Court will not be expanded as the Court examines its ruling on Mr. Neale, the Court will set a

hearing in this matter to permit all counsel to argue to the Court whether it committed a significant error in its prior October 2, 2020, ruling based on the record before the Court as it existed at the time, considered in the light of controlling law.

At that hearing, the Court will also hear from counsel as to, if the Court persists in its October 2, 2020, ruling as to Mr. Neale's anticipated testimony, whether there are other matters, not excluded by this Court's ruling, about which Mr. Neale should be permitted to opine before a jury.

### IV.     Conclusion

For the foregoing reasons, the Court denies, in part, and grants, in part, BNSF's motion for *Daubert* hearing and reconsideration of exclusion of expert William Neale (Dkt. No. 186).  The Court will set a hearing in this matter by separate Order.

It is so ordered this 31st day of March, 2022.

_____
Kristine G. Baker
United States District Judge